F. Lee BAILEY, Plaintiff,

v.

UNITED STATES, Defendant.

No. 96–666.

United States Court of Federal Claims.

Jan. 21, 2000.

Mark L. Horwitz, Horwitz & Fussell, Orlando, Florida, attorney of record for the plaintiff. John L. Napier, Winston & Strawn, Washington, D.C., of counsel.

Sharon Y. Eubanks, Deputy Director, Torts Branch, Civil Division, United States Department of Justice, and David M. Cohen, Director, Commercial Litigation Branch, Civil Division, attorneys of record for the defendant. Salomon Gomez and Terry Petrie, Commercial Litigation Branch, of counsel.

## OPINION

HORN, Judge.

### FACTS

This matter comes before the court on defendant's motion to dismiss pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC), for lack of subject matter jurisdiction, or, in the alternative, dismissal pursuant to RCFC 12(b)(4), for failure to state a claim upon which relief may be granted. Defendant filed an earlier motion to dismiss, which was denied by the court. *See Bailey v. United States,* 40 Fed.Cl. 449 (1998). Defendant raises the issue of the jurisdictional bar of 28 U.S.C. § 1500 (1994) ("Pendency of claims in other courts"), and re-urges other arguments, in support of its contention that plaintiff's claims previously were brought before the United States District Court for the Northern District of Florida (Gainesville Division), and the United States Court of Appeals for the Eleventh Circuit, and that, therefore, the United States Court of Federal Claims is without jurisdiction to adjudicate the claims.

The underlying facts of this case are found in the court's earlier opinion on the defendant's unsuccessful motion to dismiss and also are outlined in pertinent part below. *Id.* at 451–53. The plaintiff, F. Lee Bailey, is an attorney who is licensed to practice in both Florida and Massachusetts. In March 1994, he was retained to represent Claude Luis Duboc, who had been charged with international drug importation and money laundering in the matter of *United States v. Claude Luis Duboc,* Crim. No. 94–01009/MP, United States District Court for the Northern District of Florida, Gainesville Division. The plaintiff informed members of the United States Attorney's Office for the Northern District of Florida that Mr. Duboc was willing to negotiate a plea of guilty.

According to the complaint, the government's focus then became the forfeiture and repatriation of Mr. Duboc's property, which was estimated to be worth between $50,000,000.00 and $100,000,000.00. Much of Mr. Duboc's property, however, was located outside of the United States and included securities and cash in Luxembourg, real estate in Hong Kong, numerous vehicles, a yacht, and two houses in France. The houses in France required substantial repairs and maintenance in order to realize their maximum value at sale. In addition to the repairs, there also were a number of other necessary expenses associated with Mr. Duboc's property, including taxes, the cost of staff, overdue debts to trades persons, and maintenance costs.

The plaintiff alleges that he had discussions with the United States Attorney's Office about the "fees for legal services and repatriation services," including the costs associated with the maintenance, liquidation and repatriation of the overseas property, and the attorney's fees and legal expenses associated with the representation of Mr. Duboc. According to the plaintiff, "[t]he government prosecutors became concerned that they would need assistance with the repatriation of Duboc's assets and asked Bailey to take on the responsibility of repatriating Duboc's overseas assets. Bailey agreed to the assignment."

According to the complaint, on or about April 26, 1994, the plaintiff had a private meeting with Assistant United States Attorney (AUSA) Gregory R. Miller who offered to unconditionally transfer to the plaintiff one of Mr. Duboc's Luxembourg cash accounts,

which contained approximately $3,500,000.00, from which the plaintiff's claims for "compensation for his services would be paid." Mr. Bailey alleges that AUSA Miller, "on behalf of the United States," agreed to exempt this account from any forfeiture claim by the government.

Mr. Duboc also owned 602,000 shares of Biochem Pharma stock, a publicly traded Canadian pharmaceutical company. The plaintiff states that during the course of a meeting, on April 26, 1994, United States Drug Enforcement Special Agent Carl Lilley recommended that, instead of transferring the Luxembourg cash account to the plaintiff, it would be more advantageous to all of the parties to transfer the shares of Biochem Pharma stock to the plaintiff. According to the plaintiff, Special Agent Lilly suggested this plan because, under the applicable statutes, the government could not hold the stock and would have to sell it immediately upon forfeiture in one block, probably destroying the value of the stock and diminishing the potential yield to the United States.

The plaintiff also alleges in his complaint that at a private conference between Mr. Bailey and AUSA Miller, who, according to the plaintiff, was "acting on behalf of the United States," the plaintiff was told that "Bailey would have the right to sell any and all of the shares of Biochem Pharma at any time, and in any fashion, Bailey chose," but that "if the Biochem Pharma stock were to decrease in value, there would be no other source from which Bailey could be compensated for all of his services and reimbursed for his expenses." The plaintiff states that he agreed to accept the stock instead of the money in the Luxembourg account as the source of his fees and expenses. The plaintiff alleges that the parties understood that the plaintiff bore the risk of loss if the stock price decreased, but that he would have the benefit of any increase if the stock price rose.

The 602,000 shares of Biochem Pharma stock were transferred from Mr. Duboc to a personal account maintained by the plaintiff at Credit Suisse in Geneva, Switzerland on or about May 9, 1994. The defendant acknowledges that the government assisted in the transfer of the Biochem Pharma stock from Mr. Duboc to Mr. Bailey's account in Geneva, Switzerland. However, the defendant states that the stock was transferred to the plaintiff so that the plaintiff could "use proceeds in the account for the reasonable upkeep of the property in France until the Government found a buyer, and then, through forfeiture proceedings, transferred title to the United States." The defendant alleges that the plaintiff's role was "to serve as trustee of the fund, on behalf of the United States."

The alleged agreement at issue between the plaintiff and the defendant is based upon the conversations that the plaintiff claims were held between the plaintiff and the government agents who allegedly were acting on behalf of the United States. The alleged agreement was never put into writing. In his complaint, the plaintiff states that the actions were taken:

> with the approval of individuals who had actual authority to contract and bind the United States. These individuals included, but are not limited to, A.U.S.A. Gregory Miller; his superiors, including but not limited to U.S. Attorney Michael Patterson; and the appropriate representatives of the United States Department of Justice located in Washington, D.C., including but not limited to representatives of the Asset Forfeiture Division of the Department of Justice. These individuals had full authority to approve the agreement with Bailey and exercised that authority properly. The agreement with Bailey was in conformance with applicable Department of Justice regulations and guidelines relating to transfers to counsel in cases involving asset forfeitures and was in accord with all other Department of Justice and United States regulations, guidelines and procedures.

The plaintiff claims that, pursuant to the agreement between the parties and with knowledge of the defendant, he developed and implemented strategies to recover Mr. Duboc's property for the United States and, among other expenses, incurred the cost of retaining legal counsel in France to assist in the repatriation of the property.

On or about January 22, 1996, the defendant United States sought forfeiture of the

602,000 shares of Biochem Pharma stock that were in the plaintiff's possession by filing a motion in the United States District Court for the Northern District of Florida, Gainesville Division, with the Judge who had presided over the *Duboc* criminal proceedings. The plaintiff alleges that this action took place after the government learned about the significant increase in the price of the Biochem Pharma stock. According to the complaint filed in the Court of Federal Claims, although the government had previously sought forfeiture of Mr. Duboc's other assets during 1994 and 1995, no forfeiture action had been initiated by the government for the Biochem Pharma stock which had been previously transferred to the plaintiff. The Judge ordered the plaintiff to return the Biochem Pharma stock to the registry of the District Court. Mr. Bailey was incarcerated on February 29, 1996 for civil contempt after failing to complete a return of the shares of the stock to the court. On March 22, 1996, the Judge entered a "Stipulated Order of Forfeiture" for the 602,000 shares of Biochem Pharma stock, in which he stated that Mr. Duboc had stipulated and consented to the forfeiture of the stock to the government. The plaintiff claims that the Biochem Pharma stock was worth in excess of $16 million at the time of the forfeiture order.

The plaintiff states that on April 24, 1996 he filed a petition in the District Court in response to the order of forfeiture requesting that the court issue an amended forfeiture order and declare that the 602,000 shares of Biochem Pharma stock and the proceeds therefrom were vested in the plaintiff. The plaintiff alternatively stated that the dispute involved a breach of contract and invoked jurisdiction under 28 U.S.C. § 1491. On May 16, 1996, the plaintiff filed a motion to transfer the case to the United States Court of Federal Claims. On May 17, 1996, the parties stipulated that the plaintiff's petition of April 24, 1996 in the Florida District Court would be dismissed with prejudice. The stipulation did not address Mr. Bailey's right to seek damages for breach of contract from the United States. The plaintiff alleges that to date he has received no compensation for his efforts in maintaining, liquidating, and repatriating Mr. Duboc's overseas assets.

The first count of the plaintiff's breach of contract action filed in this court states that the defendant breached an express contract with the plaintiff by taking action to deprive him of the 602,000 shares of Biochem Pharma stock, which allegedly were transferred to him in fee simple as consideration for his property repatriation efforts. The second count of the complaint alleges that the government, through its agents, conducted itself in a manner that created an implied-in-fact contract between the parties and that the defendant breached this implied-in-fact contract by taking action to deprive the plaintiff of the 602,000 shares of Biochem Pharma stock, severely damaging him financially.

The defendant argues that the Biochem Pharma stock had been obtained directly or indirectly through Mr. Duboc's drug trafficking activities and, therefore, was subject to forfeiture to the United States. The defendant states that the plaintiff knew that the stock was considered a forfeitable asset because Mr. Bailey had included it on a list of Mr. Duboc's assets which he had prepared and provided to the government while acting as counsel to Mr. Duboc. The defendant acknowledges that it assisted in the transfer of the stock to the plaintiff's personal account in Geneva, Switzerland, but states that its understanding of the oral agreement in question was that the plaintiff would use the stock or stock proceeds for the reasonable upkeep of Mr. Duboc's property in France until the property could be sold and the proceeds repatriated.

Mr. Bailey filed a Motion for Approval of Expenses in the United States District Court for the Northern District of Florida. The Judge issued an order addressing the Motion on October 23, 1997, granting in part and denying in part the expenses claimed. *United States v. Claude Louis Duboc*, No. 1:94cr9–MP, Order at 1, 2 (N.D.Fla. Oct. 23, 1997). The Motion for Approval of Expenses did not include attorney's fees for representation of Mr. Duboc. Mr. Bailey requested approval of expenses totaling $1,585,690.22. *Id.* at 3. The claimed expenses fell into two categories. The first category was associated with Mr. Duboc and his representation by

Mr. Bailey, and included, for example, air travel, hotel and meal expenses; rental cars; medical expenses for Mr. Duboc; expenses for an assistant for Mr. Duboc; petty cash payments to Mr. Duboc's jail account; outside legal fees to attorneys assisting in the representation of Mr. Duboc; telephone calls, and Federal Express and photocopying expenses. *Id.* at 5–26. The second category of claimed expenses were related to the "upkeep and protection of Duboc's European holdings." *Id.* at 26. Not all of these two categories of claimed expenses were approved by the Judge, but $1,092,523.24 was approved "in costs and services related to the European holdings of Duboc." The total of approved expenses was $1,221,177.06. *Id.* at 27, 32. However, the District Court Judge also found that Mr. Bailey had sold shares of stock, including shares of Biochem Pharma stock, which were forfeitable to the United States. The court found that $423,737.77 from the stock proceeds and claimed as expenses by plaintiff were not approved, and Mr. Bailey was ordered to repay $423,737.77 to the United States. *Id.* at 32.

Mr. Bailey appealed to the United States Court of Appeals for the Eleventh Circuit, arguing both for the recusal of the Judge, and also for the expenses considered but not approved by the Judge. *United States v. Bailey,* 175 F.3d 966, 968 (11th Cir.1999), *reh'g denied* (Aug. 5, 1999). The Eleventh Circuit denied the motion for recusal, *id.* at 969, and affirmed the lower court on all expense issues save one, which was remanded for reconsideration, *id.* at 970. On November 8, 1999, the government filed a motion in the United States District Court for the Northern District of Florida to enforce the District Court's order, seeking an Order to Show Cause why Mr. Bailey "should not be held in civil contempt of court for his failure to remit $423,737.77 and for such other writs and orders as the Court deems appropriate." An order issued by the District Court on December 22, 1999, reflects that the sum in question was $418,237.77, due to a previous remittance and credit. In a status conference on January 14, 2000, Mr. Bailey advised this court that he had satisfied the Judge's instructions and paid the amount established due by the Federal District Court. Subse-

quently, on January 19, 2000, this court was informed that the show cause hearing set for January 17, 2000 on the outstanding money due had been canceled, with no further proceedings scheduled.

## DISCUSSION

In the Court of Federal Claims the defendant has filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(4) of the Rules of the United States Court of Federal Claims, for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Subject matter jurisdiction may be challenged at any time by the parties, by the court sua sponte, or on appeal. *Booth v. United States,* 990 F.2d 617, 620 (Fed.Cir. 1993), *reh'g denied; United States v. Newport News Shipbuilding & Dry Dock Co.,* 933 F.2d 996, 998 n. 1 (Fed.Cir.1991).

Once jurisdiction is challenged by the court or the opposing party, the plaintiff bears the burden of establishing jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). A plaintiff must establish jurisdiction by a preponderance of the evidence. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988); *Alaska v. United States,* 32 Fed.Cl. 689, 695 (1995), *appeal dismissed,* 86 F.3d 1178 (Fed. Cir.1996). When construing the pleadings pursuant to a motion to dismiss, the court should not grant the motion unless " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.' " *Son Broadcasting, Inc. v. United States,* 42 Fed. Cl. 532, 537 (1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (alterations in original).

Pursuant to RCFC 8(a)(1) and Federal Rule of Civil Procedure 8(a)(1), a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v.*

*United States,* 124 F.3d 1462, 1465 (Fed.Cir. 1997), *reh'g denied.* "[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), *aff'd,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

When deciding on a motion to dismiss based on either lack of subject matter jurisdiction or failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995); *Hamlet v. United States,* 873 F.2d 1414, 1416 (Fed.Cir.1989), *cert. denied,* 517 U.S. 1155, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). If a defendant challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint but must instead bring forth relevant, competent proof to establish jurisdiction. *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. at 189, 56 S.Ct. 780; *see also Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d at 747; *Catellus Dev. Corp. v. United States,* 31 Fed.Cl. 399, 404–05 (1994). The court may consider all relevant evidence in order to resolve the factual dispute, including evidentiary matters outside the pleadings. *Indium Corp. of Am. v. Semi–Alloys, Inc.,* 781 F.2d 879, 884 (Fed.Cir.1985), *cert. denied,* 479 U.S. 820, 107 S.Ct. 84, 93 L.Ed.2d 37 (1986).

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491. The Tucker Act states:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States; (2) for a refund from a prior payment made to the government; or (3) based on federal constitutional, statutory, or regulatory law. *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 605–06, 372 F.2d 1002 (1967)); *see also Palmer v. United States,* 168 F.3d 1310, 1314 (Fed.Cir.1999); *Stinson, Lyons & Bustamante, P.A. v. United States,* 33 Fed. Cl. 474, 478 (1995), *aff'd,* 79 F.3d 136 (Fed. Cir.1996). A waiver of traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *Saraco v. United States,* 61 F.3d 863, 864 (Fed.Cir.1995) (quoting *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), *cert. denied,* 517 U.S. 1166, 116 S.Ct. 1565, 134 L.Ed.2d 665 (1996)).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; "it does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607, *reh'g denied,* 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) (quoting *United States v. Testan,* 424 U.S. at 398–99, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)); *see also Saraco v. United States,* 61 F.3d at 865 (citing *Zumerling v. Devine,* 769 F.2d 745, 749 (Fed.Cir.1985) (citing *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976))); *see also United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (en banc), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Mitchell,* 445 U.S. at 538, 100 S.Ct. 1349. For claims founded on a statute or regulation to be successful, "the provisions relied upon must contain language which could fairly be inter-

preted as mandating recovery of compensation from the government." *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. 948 (quoting *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002 (1967)); *see also Doe v. United States,* 100 F.3d 1576, 1579 (Fed.Cir.1996), *reh'g denied* (1997).

## I.  28 U.S.C. § 1500

In support of its motion to dismiss, the defendant raises the issue of the jurisdictional bar of 28 U.S.C. § 1500, which provides that the United States Court of Federal Claims shall not have jurisdiction over any claim the plaintiff has pending against the United States in another court. Defendant contends that at the time the plaintiff filed his complaint in the United States Court of Federal Claims, on October 22, 1996, there was pending in the United States District Court for the Northern District of Florida (Gainesville Division), and subsequently on appeal before the United States Court of Appeals for the Eleventh Circuit, "a suit raising essentially the same claims" and "aris[ing] from the same operative facts," mandating dismissal under Section 1500. After considerable activity in the Florida Federal District Court and the Court of Appeals for the Eleventh Circuit, the plaintiff advised this court that he had recently remitted the entire amount established to be due by the District Court, thereby satisfying any outstanding District Court orders, and that the show cause hearing scheduled for January 17, 2000, had been canceled with no further proceedings scheduled.

The statute in question, 28 U.S.C. § 1500, provides as follows:

Pendency of claims in other courts

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.

Congress has been given authority, pursuant to the United States Constitution, to define the jurisdiction of the lower federal courts. *See Keene Corp. v. United States,* 508 U.S. 200, 207–08, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). Moreover, "[t]he limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

According to the United States Court of Appeals for the Federal Circuit, the purpose of Section 1500 is to "force an election where both forums could grant the same relief, arising from the same operative facts." *Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1564 (Fed.Cir.1988), *cert. denied,* 489 U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). Otherwise stated, "[t]he purpose of section 1500 is to prohibit the filing and prosecution of the same claims against the United States in two courts at the same time." *Id.* at 1562. In *Keene Corp. v. United States,* the United States Supreme Court commented on the difficulty of applying 28 U.S.C. § 1500:

The statutory notion of comparable claims is more elusive. By precluding jurisdiction over the claim of a plaintiff with a suit pending in another court "for or in respect to" the same claim, § 1500 requires a comparison between the claims raised in the Court of Federal Claims and in the other lawsuit. The exact nature of the things to be compared is not illuminated, however, by the awkward formulation of § 1500.

*Keene Corp. v. United States,* 508 U.S. at 210, 113 S.Ct. 2035.

In *Johns–Manville,* the United States Court of Appeals for the Federal Circuit addressed interpretation of the term "claim" in the context of 28 U.S.C. § 1500:

Both the decision in *British American* [*British American Tobacco Co. v. United States,* 89 Ct.Cl. 438, 1939 WL 4266 (1939), *cert. denied,* 310 U.S. 627, 60 S.Ct. 974, 84 L.Ed. 1398 (1940) ] and the decision in *Los Angeles* [*Los Angeles Shipbuilding & Drydock Corp. v. United States,* 138 Ct.Cl. 648, 152 F.Supp. 236

(1957) ] are explicit in their interpretation of the term "claim" in section 1500. Both reject the argument that "claim" is based on legal theories. Both hold "claim" to be defined by the facts. *British American* specifically applied this interpretation to a case involving tort and contract theories, the same theories raised in the instant appeal. A contrary interpretation would defeat the intent of Congress and would allow a plaintiff to bring duplicative actions on the same operative facts. "The possibility of inconsistent judicial resolution of similar legal issues would then exist and the dual proceedings could result in unfair burden to the defendant, and unnecessary crowding of this court's docket and general administrative chaos." *City of Santa Clara v. United States*, 215 Ct.Cl. 890, 893, 1977 WL 9595 (1977). Accordingly, we construe the term "claim" in 28 U.S.C. § 1500 to be defined by the operative facts alleged, not the legal theories raised.

*Johns–Manville Corp. v. United States*, 855 F.2d at 1562–63 (footnote omitted). In *Johns–Manville*, indemnification claims under the Federal Tort Claims Act were filed in federal district courts, and contract-based claims were filed in the Court of Federal Claims. Although different legal theories were employed, the relief sought in both fora was money, such that, under Section 1500, the Court of Federal Claims was determined to be without jurisdiction. *Id.* at 1557–58, 1567–68. This analytical framework was confirmed by the United States Supreme Court in *Keene Corp. v. United States*, 508 U.S. at 212–14, 113 S.Ct. 2035, and recently reaffirmed by the Federal Circuit in *United States v. County of Cook, Illinois*, 170 F.3d 1084, 1091 (Fed.Cir.1999).

In *Keene Corporation v. United States*, the Supreme Court addressed the manner in which two pending cases should be analyzed when applying Section 1500, as follows:

> These precedents demonstrate that under the immediate predecessor of § 1500, the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if

> there was some overlap in the relief requested.

*Id.* at 212, 113 S.Ct. 2035 (citations omitted; footnote omitted).

In *Loveladies Harbor, Inc. v. United States*, the United States Court of Appeals for the Federal Circuit discussed whether the same relief must be sought in the two courts in order to trigger Section 1500:

> For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief. We know of no case arising from the same operative facts in which § 1500 has been held to bar jurisdiction over a claim praying for relief distinctly different from that sought in a pending proceeding.

*Loveladies Harbor, Inc. v. United States*, 27 F.3d 1545, 1551 (Fed.Cir.1994), *aff'd*, 28 F.3d 1171 (Fed.Cir.1994), *reh'g denied.* The court in *Loveladies* also observed that "[v]iewing claims as related to the nature of the relief sought is unremarkable. And using differing relief as a characteristic for distinguishing claims was especially appropriate here, because the Court of Federal Claims and its predecessors have been courts with limited authority to grant relief." *Id.* at 1550 (footnote omitted). Thus, the identity of claims under Section 1500 is tested by both the identity of operative facts and the identity of relief requested. *Id.* at 1552. *Accord Dico, Inc. v. United States*, 48 F.3d 1199, 1202 (Fed.Cir.1995) ("Our decision in *Loveladies*, however, made it clear that *Casman* [*v. United States*, 135 Ct.Cl. 647 (1956) ] is still good law and that different relief means different claims, which in turn means that § 1500 does not apply. Accordingly, Dico is correct that if it had sought different relief in its two actions, dismissal of the Court of Federal Claims suit under § 1500 would have been improper.").

In *Dico*, the plaintiff had filed an action in the United States District Court for the Southern District of Iowa and the United States Court of Federal Claims for reimbursement from the government for past and future clean up costs of contaminated groundwater Dico had incurred pursuant to

an environmental clean up order issued by the United States Environmental Protection Agency. *Dico, Inc. v. United States,* 48 F.3d at 1200. Dico relied on statutory reimbursement provisions, and, in the alternative, on the Fifth Amendment's Due Process and Takings Clauses. The suit in the Court of Federal Claims, which had been filed subsequent to the filing of the United States District Court suit, asked for the same past and future clean up costs, and relied on the same theories of recovery. The Court of Federal Claims determined that, under these facts, the court was without jurisdiction under Section 1500. Attempting to avoid the Section 1500 bar, Dico argued in the Court of Appeals for the Federal Circuit that it had pursued different relief in the two trial courts—statutory reimbursement in the District Court and money damages for deprivation of property rights in the Court of Federal Claims. *Id.* at 1202. The Federal Circuit held:

> Clearly, Dico's two actions seek the "same or ... overlapping relief," *Loveladies,* 27 F.3d at 1554. In its CERCLA suit, Dico seeks money from the Government for a portion of its overall remediation costs. In the Court of Federal Claims suit, Dico seeks money from the Government for the same expenses, in exactly the same amount, on Due Process and Takings theories. That the legal theories are different does not mean that the relief is different.

> \*   \*   \*   \*   \*   \*

*UNR*[1] established that § 1500 is a battle of pleadings. *Loveladies* further established that if the Court of Federal Claims complaint pleads facts which demonstrate a different legal injury from that pursued in another court, or seeks different relief, it involves a different claim which § 1500 does not bar. If a plaintiff in fact has two different claims, as defined in *Loveladies,* then it is the responsibility of the plaintiff to allege, clearly and with specificity, that different claims are involved in its two actions. An analysis of this case shows that the same claims were made by Dico in both actions. Dico's two complaints, which obviously copied each other with only minor or irrelevant variations, do not indicate otherwise or identify the distinction that Dico now claims to have intended.

*Id.* at 1203–04 (footnote added).

Thus, the same action, filed in District Court prior to being filed in the Court of Federal Claims, divests the latter of jurisdiction. Pursuant to the language of 28 U.S.C. § 1500, and United States Supreme Court and Federal Circuit case law interpreting that provision, this court may not exercise jurisdiction over an action if, at the time of its filing, the same claim is pending in another court based on substantially the same operative facts and requesting essentially the same relief. If, however, the operative facts or the relief requested are different, Section 1500 is not implicated. Defendant contends, in support of its motion to dismiss, that when the plaintiff commenced his suit in the Court of Federal Claims, he had pending in the United States District Court in Gainesville, Florida, "a suit raising essentially the same claims as those raised here."

█ The plaintiff's amended complaint indicates that the plaintiff represented a client in a criminal case involving illegal drug charges. The criminal case resulted in the forfeiture to the United States of property said to have been purchased with the proceeds of illegal drug transactions, and alleged to be worth between $50 and $100 million, including, for example, securities, cash, real estate, motor vehicles, and a yacht. Much of the property was situated overseas. According to the complaint, the government asked the plaintiff to take action to preserve, sell, and help in repatriating to the United States the overseas property. To fund the asset repatriation activity, the complaint alleges that 602,000 shares of Biochem Pharma stock were transferred to the plaintiff. The complaint in this court continues:

> 38. A.U.S.A. [Assistant United States Attorney] Miller further informed Bailey that if the Biochem Pharma stock were to decrease in value there would be no other

---

1. *UNR Indus., Inc. v. United States,* 962 F.2d 1013 (Fed.Cir.1992), *aff'd sub nom. Keene Corp. v. United States,* 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993).

source from which Bailey could be compensated for all of his services and reimbursed for his expenses.

39. Bailey agreed to accept the said stock as the source of various fees and expenses in connection with the Duboc case, in lieu of the cash previously offered or other form of payment.

40. The parties understood and intended that if the stock became valueless, Bailey bore the risk of loss, and, by the same token, if the shares appreciated in value in whatever amount, Bailey would have the concomitant benefit of gain.

41. Shortly thereafter, Mr. Duboc, with the assistance of Special Agent Lilley, prepared and executed a letter directing the 602,000 shares of Biochem Pharma be transferred to an account maintained by Bailey at Credit Suisse in Geneva, Switzerland. . . .

42. The transfer was accomplished by agents of the United States.

43. On or about May 9, 1994, all 602,-000 shares of Biochem Pharma were transferred to Bailey's account at Credit Suisse in Geneva, Switzerland. . . .

44. All 602,0000 shares of Biochem Pharma were transferred to Bailey's account unconditionally and in fee simple.

\* \* \* \* \* \*

47. After said transfer of ownership was made, with the full knowledge and at the request of the government, Bailey performed many hours of service in developing strategies for the repatriation of Duboc's overseas assets, in maintaining said assets, and in initiating action necessary to repatriate said assets, including hiring French counsel to assist in these endeavors.

48. At all times, Bailey and the government treated the stock as Bailey's own. Bailey, without intervention or objection by the United States, borrowed substantial monies against same and incurred interest obligations and other loan-related expenses.

\* \* \* \* \* \*

52. In or about February, 1996, the United States of America, through its agents, also in breach of its agreement with Bailey, filed a Motion and Memorandum for Issuance of an Order of Forfeiture seeking forfeiture of the 602,000 shares of Biochem Pharma stock.

\* \* \* \* \* \*

55. On or about March 22, 1996, the District Court conducted a hearing on the government's forfeiture motion and entered an order of forfeiture, stipulated to by the government and Duboc but not Bailey, forfeiting all 602,000 shares of Biochem stock to the United States of America, subject to the disposition of any third party claims pursuant to 21 U.S.C. § 853(n).

56. At the time that the shares of Biochem Pharma were forfeited, the value of the stock then remaining was in excess of sixteen million dollars ($US 16,000,000).

\* \* \* \* \* \*

58. On or about April 24, 1996, Bailey filed a petition and response to the order of forfeiture in which he requested, *inter alia*, that the Court issue an amended order of forfeiture which declares that clear title to the 602,000 shares of Biochem Pharma stock and the proceeds therefrom are vested solely in Bailey. Alternatively, Bailey stated that the dispute in the matter involved a contract between the United States and Bailey which was properly to be adjudicated pursuant to 28 U.S.C. § 1491.

59. Subsequently, on or about May 16, 1996, Bailey filed a motion to transfer the case to the United States Court of Federal Claims pursuant to 28 U.S.C. § 1292 and 28 U.S.C. § 1631. The District Court did not act on plaintiff's motion.

60. On May 17, 1996, Bailey and the government stipulated that the petition filed by Bailey on or about April 24, 1996, pursuant to 28 U.S.C. § 853(n), would be dismissed with prejudice. By this stipulation, Bailey agreed to withdraw his claim to ownership of the *res* of the forfeiture action. However, the stipulation did not affect in any manner Bailey's right to seek breach of contract damages resulting from the government's breach of its contract with Bailey, since the facts relating to the

contract and the breach thereof were never before the District Court and since the District Court would in any event be without jurisdiction to hear a breach of contract case where the amount in controversy exceeds $10,000.00.

61. Indeed, as a result of the stipulation of dismissal with prejudice, the District Court entered an order that the claim of Bailey, filed in the forfeiture action pursuant to 21 U.S.C. § 853(n)(2), was dismissed with prejudice and that "the United States is determined to be the fee simple owner of all the assets that form the *res* of the subject forfeiture action," free and clear from any claim by Bailey to such assets or the proceeds derived therefrom. The order did not address any claim which Bailey may have against the United States government for breach of contract damages.

62. To date, Bailey has received no compensation either for his representation of Mr. Duboc in the Duboc case or for his efforts on behalf of the United States regarding the maintenance, liquidation and repatriation of Duboc's overseas assets.

The allegations of the amended complaint, reproduced above, conclude with two counts, the first asserting a breach of an express contract and the second asserting breach of an implied-in-fact contract. In the accompanying prayers for relief, plaintiff requests "an amount adequate to compensate him for his losses, together with interest and costs" and "any further relief the Court deems just and proper."

One of the challenges presented by the instant case is determining the scope of the District Court and Eleventh Circuit actions. Each of the parties, understandably, have offered their own interpretation. Therefore, this court requested, awaited, and reviewed the relevant orders and opinions of both courts before completing its analysis of whether Section 1500 was implicated due to overlapping claims in the trial courts.

In the order that relieved Mr. Bailey as counsel for Mr. Duboc, the District Court specifically stated that the court "retain[ed]

jurisdiction over Mr. Bailey to obtain from him a full accounting of the monies and properties held in trust by him for the United States of America," including the 602,000 shares of Biochem Pharma stock. *United States v. Duboc*, No. GCR 94–01009, Order at 1 (N.D.Fla. Jan. 12, 1996). Subsequently, the government filed a motion in District Court for Mr. Bailey to surrender the Biochem Pharma stock to the court. (It was Mr. Bailey's inability to produce the stock and stock proceeds at that time, which led to his civil contempt citation in the Florida District Court. *United States v. Bailey*, No. GCR 94–01009, Order at 4 (N.D.Fla. Feb. 3, 1996)). Then, on March 25, 1999 the government filed a separate notice for forfeiture of the Biochem Pharma stock pursuant to the forfeiture statute, 21 U.S.C. § 853, inviting persons who wished to assert an interest in the stock to petition the court for an adjudication of the claimed interest. Mr. Bailey's third party claim to the forfeiture described the alleged contract forming the basis for the Court of Federal Claims action, and asserted title to the Biochem Pharma stock based on that contract.

The government moved to dismiss Mr. Bailey's third-party claim in the District Court, pursuant to 21 U.S.C. § 853, with the following argument:

> To state a claim under Section 853(n), a third party must allege facts sufficient to demonstrate that he has a legal right, title or interest in specific assets that he acquired as a bona fide purchaser for value without cause to know that the property was subject to forfeiture. Even assuming all of the factual allegations in Bailey's petition are true, as the court must assume for the purposes of this motion, Bailey has not asserted any facts supporting a contention that he "purchased" all 602,000 shares of stock subject to forfeiture. Nor is Bailey able to establish that he was without reason to know that the stock was subject to forfeiture at the time he acquired it. To the contrary, it is well-established that a criminal defense lawyer cannot claim to be the bona fide purchaser[2] of property he

---

2. Section 853(n) provides:

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

knows to be drug proceeds at the time he acquires the property from his client in payment of his fee.

Bailey attempts to distinguish this rule by asserting that the government promised him that the subject shares of stock would not be forfeited. The government denies that any such representation was ever made. But even assuming for the purposes of this motion that the allegation were correct, it would be unavailing. The issue here is not whether Bailey thought the property would be forfeited, but whether he knew it was subject to forfeiture. Moreover, a government official's representation that property will not be forfeited from a defendant does not confer a legal right, title or interest to a third person. If anything, such a representation could give rise to a cause of action based on the alleged representation, but as is also well-established, a cause of action is not cognizable as a legal interest in forfeited property within the meaning of Section 853(n).

\* \* \* \* \* \*

If anything, Bailey's assertion that the government promised to forego forfeiture of the Biochem stock and to allow the proceeds of the sale of the stock to be used to pay his attorneys fees would give rise to a cause of action based on a theory of *quantum meruit*, promissory estoppel, or some other legal theory. Indeed, Bailey suggests in his petition that "the essence of the dispute here involves a contract between the United States and Bailey that is properly to be adjudicated pursuant to 28 U.S.C. § 1491." Petition at 12.

\* \* \* \* \* \*

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section; the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853(n)(6)(B).

**3.** The government's motion at this point contained the following footnote:

The United States, of course, denies that there would be any merit in such a claim.

If Bailey believes that he has a cause of action based on contract, he has a right to file a lawsuit in the Court of Claims.[3]

At oral argument on the motion to dismiss filed in this court, plaintiff's counsel addressed the futility of his client finding a remedy under the forfeiture statute:

So, what is clear from looking at the order of Judge Paul that was appealed from and is presently pending in the 11th Circuit is that it is limited to Judge Paul's order based upon the jurisdiction that he retained over Mr. Bailey, even before the claim was filed, you know, that original order. Bailey, you're the lawyer; I've got jurisdiction over you. You're going to file these accountings with me, and if you don't, you stand [the] risk of contempt again. So, it's our position that in every case that the government has cited under [Section] 1500 and every case that I can find, the other action is one in which the Plaintiff has picked another forum to proceed on. Mr. Bailey didn't pick that forum. He picked it as to the claim on the issue of forfeiture which we contend his lawyer and he found correctly that that was really a claim based upon a breach of contract, given the realities of the relation back doctrine, because that relation back doctrine has, you know, you can be seven purchasers down and the government can still take that stock, and then you've got to prove that you took it without any knowledge and you're a bona fide purchaser of value. And in this case, the government knew well and Mr. Bailey knew well the source of the funds, because the government transferred it to him.

The court notes that the government's seeming endorsement of the Court of Federal Claims as a possible forum, included in papers filed in District Court, does not foreclose the government an opportunity to argue in the above captioned case that the District Court is the true and exclusive forum. *See Dunklebarger v. Merit Sys. Protection Bd.*, 130 F.3d 1476, 1480 (Fed.Cir.1997) ("It is well settled that no action of the parties can confer subject-matter jurisdiction on a tribunal and that the principles of estoppel do not apply to vest subject-matter jurisdiction where Congress has not done so.").

It appears, therefore, that the government and the plaintiff both had grave doubts that Mr. Bailey could ever establish himself as a bona fide purchaser and thereby demonstrate the basis for a right, title, or interest in the Biochem Pharma stock in a Section 853(n) proceeding.

The allegations of whether the defendant breached an agreement between the government and Mr. Bailey, the issue currently before the Court of Federal Claims, almost was explored in the framework of plaintiff's third party claim in the 21 U.S.C. § 853(n) District Court hearing. In an order, Judge Paul noted:

> Still, the Court agrees that Bailey may be permitted to conduct additional discovery to the extent that it relates to issues which will be determined at the upcoming § 853(n) proceeding. However, the Court emphasizes that the upcoming hearing will involve a very narrow issue: Did the Government give the Biochem stock to Bailey, as trustee for the United States, so that he could use the stock to maintain his then-client's French properties pending forfeiture thereof; or, as maintained by Bailey, did the Government give all 602,000 shares of the stock to him, outright, in fee simple? Any discovery must therefore be limited to matters which directly pertain to this narrow issue.

*United States v. Duboc,* No. GCR 94–01009–MMP, Order at 15–16, 25 (N.D.Fla. May 9, 1996) (footnote omitted). Ultimately, however, the Section 853(n) hearing on the alleged breached agreement was never held and the issue was not addressed in the District Court. On May 16, 1996, Mr. Bailey filed a motion to transfer the matter to the Court of Federal Claims pursuant to 28 U.S.C. § 1292 and 28 U.S.C. § 1631 ("Transfer to cure want of jurisdiction"). The motion indicated that Mr. Bailey sought to bring a breach of contract action for monetary relief above $10,-000.00 in the Court of Federal Claims. The motion to transfer, however, was never acted on, for on May 17, 1996, Mr. Bailey and the government filed a stipulation that Mr. Bailey's Section 853(n)(2) petition be dismissed with prejudice. The District Court then filed an order on May 17, 1996, dismissing, with prejudice, Mr. Bailey's Section 853(n) claim, and declaring the United States to be the "fee simple owner of all the assets that formed the *res* of the subject forfeiture action ...." *United States v. Duboc,* No. GCR 94–01009–MMP, Order at 3 (N.D.Fla. May 17, 1996). The District Court order further provided that:

> (3) This Court does specifically retain jurisdiction over Mr. Bailey to enforce all prior contempt orders of this Court, and to hear and determine a reasonable attorney's fee and expenses for his prior services. Nothing contained herein shall be interpreted in any manner as discharging Mr. Bailey from any previously entered contempt order, or as relieving him from his continuing obligation to fully comply therewith, including, without limitation, the payment of the remaining $700,000 into the registry of the court and the making of a full, complete, and detailed accounting of all assets/income received by him, and all expenditures made.

*Id.* at 4. Subsequently, in an order filed October 23, 1997, the District Court Judge approved Mr. Bailey's expenses incurred in representing Mr. Duboc, and for expenses associated with the protection of Mr. Duboc's European property. *United States v. Claude Louis Duboc,* No. 1:94cr9–MP, Order at 1, 2 (N.D.Fla. Oct. 23, 1997). The plaintiff observes that Judge Paul's order "addresses expenses only and did not pertain to any claim by Bailey for his services which are the subject of this litigation [in the Court of Federal Claims]."

The terminology used by the plaintiff, however, has not always been specific, or perhaps in the true nature of argument in the alternative has been chosen to match the particular legal proceeding underway. For example, with respect to the identity of remedies sought in the District Court and in the Court of Federal Claims, the plaintiff argues that he was seeking the "return of the *res,* i.e., the Biochem Pharma stock" in the District Court forfeiture procedure, compared to money damages (the value of the *res* )for breach of contract in this court. In Mr. Bailey's third party Section 853(n) claim, however, he requested that "the Court issue

an amended order of forfeiture which declares that clear title to the 602,000 shares of Biochem Pharma stock and the proceeds therefrom are vested in him and him alone." Regardless of the verbiage chosen by the plaintiff or the defendant, however, comparing the true nature of the two causes of action is the relevant inquiry. In *Dico v. United States*, 48 F.3d at 1202, the court wrote: "Different relief, not different theories of recovery, means different claims." In this regard the United States Court of Appeals for the Federal Circuit recently held that:

> As we noted in *Loveladies*, in a discussion of the facts of *British American Tobacco:*
>> The plaintiff [in *British American Tobacco Co. v. United States*, 89 Ct.Cl. 438, 440, 1939 WL 4266 (1939)] brought suit against the government in district court under a tort theory, and in the Court of Claims under a contractual theory. In both courts plaintiff sought a money judgment. The Court of Claims held that § 1500 barred the claim before it. It made no difference that the two suits were based on different theories; the plaintiff had only one claim for money based on the same set of facts.
>
> *Loveladies*, 27 F.3d at 1551; *see also Keene*, 508 U.S. at 213–14, 113 S.Ct. 2035 .... [In *United States v. County of Cook, Illinois*] [b]oth counts clearly arise out of the same operative facts, and both counts seek the same relief—money with interest, albeit under different theories (tax law versus a Fifth Amendment takings theory).

*United States v. County of Cook, Illinois*, 170 F.3d at 1091.

As the Federal Circuit held in *Dico*, "[i]f a plaintiff in fact has two different claims, as defined in *Loveladies*, then it is the responsibility of the plaintiff to allege, clearly and with specificity, that different claims are involved in its two actions." *Dico, Inc. v. United States*, 48 F.3d at 1204. With respect to remedies, in the instant case, the plaintiff has not demonstrated that seeking the stock (the *res*) and stock proceeds in the forfeiture action in District Court is significantly different from seeking a money remedy in the Court of Federal Claims. Even if the reme-

dies in the two courts both are deemed essentially remedies for money, however, Section 1500 is assessed not only by reviewing the identity of remedies, but also by whether or not the operative facts defining the claims in the two courts are the same.

Plaintiff's forfeiture claim for the *res* and its proceeds had been dismissed, with prejudice, and was not pending in the District Court on October 22, 1996, when the Court of Federal Claims breach of contract action was filed. On May 17, 1996, Mr. Bailey and the government filed a stipulation to dismiss the petition filed under 21 U.S.C. § 853(n), and in a responsive order filed the same day, the District Court dismissed, with prejudice, Mr. Bailey's third party claim under the forfeiture statute. A comparison of which issues had been addressed and disposed of by the District Court and which issues remained in the District Court to the plaintiff's claim in the Court of Federal Claims, therefore, is critical. The District Court Judge's dismissal of plaintiff's forfeiture claim did not address the issue of an alleged breach of contract to compensate him for repatriation work, nor had the District Court proceedings reviewed the alleged breach. The District Court order did state that "[t]he United States is determined to be the fee simple owner of all the assets that formed the res of the subject forfeiture action, free and clear from all claim of right, title, or interest that F. Lee Bailey, his heirs, devisees, or assigns, may heretofore or hereafter have claimed or asserted in or to such assets or proceeds derived therefrom." *United States v. Bailey*, No. GCR 94–01009–MMP, Judgment at 1 (N.D.Fla. May 17, 1996). Subsequently, in an order issued by the District Court Judge in the *Duboc* criminal case which relieved Mr. Bailey as counsel to Mr. Duboc, the court specifically retained jurisdiction to receive an accounting of the 602,000 shares of Biochem Pharma stock. What remained in the District Court for action was an accounting for costs and expenses in two categories—expenses associated with Mr. Bailey's representation of a criminal defendant, Mr. Duboc, and expenses associated with the protection and repatriation of the European property—which the District Court deter-

mined were reimbursable, if reasonable. Neither of these expense categories are before the Court of Federal Claims.

The expenses ultimately approved by the District Court were all expenses considered by the court to be associated with Mr. Bailey's representation of Mr. Duboc. The Judge wrote:

In its various responses to Bailey's motion for expenses, and at the hearing on that motion, the Government has contested large portions of Bailey's claimed expenses. In essence, the Government argues that many of the items for which Bailey now seeks reimbursement were expenditures that were patently unreasonable (though arguably in furtherance of Bailey's legitimate representation of Duboc), or expenditures that were unreasonable precisely because they were spent on items or services unconnected with Bailey's legitimate representation of Duboc and his criminal case. For those reasons, the Government argues that many of the items which are included in Bailey's motion for expenses do not merit repayment with funds of the United States.

As discussed below, the Court agrees with the Government's position that many of the "expenses" which have been submitted by Bailey to this Court are unreasonable and/or unrelated to Bailey's duties as an attorney representing a criminal defendant before this tribunal and will not be reimbursed from the public coffers.

\*     \*     \*     \*     \*     \*

The Court finds that it is within its inherent authority to exercise its informed discretion in order to come to a decision on an attorney's motion for reimbursement of expenses in connection with proceedings which were held before the Court. In reaching a decision, the Court must apply a test of objective reasonableness. That is, an attorney who files a motion for expenses shall only be reimbursed for those expenses incurred by him on behalf of his client which, in the judgment of the Court, were objectively reasonable.

\*     \*     \*     \*     \*     \*

The Court finds that the above-described standard should be applied to the motion *sub judice*. That is, to the extent that this Court finds any portion of Bailey's motion for expenses to be extravagant, unreasonable, or unnecessary to the preparation and support of Duboc's criminal case before this Court, Bailey shall not receive reimbursement therefor.

*United States v. Duboc*, No. 194cr9–MP, Order at 4–5 (N.D.Fla. Oct. 23, 1997).

In the Court of Federal Claims, the operative facts critical to a consideration of plaintiff's breach of contract allegations revolve around an alleged agreement between Mr. Bailey and the government to transfer the shares of Biochem Pharma to Mr. Bailey as part of an admitted arrangement to have Mr. Bailey assist the government in the repatriation of the European property owned by Mr. Duboc. The plaintiff argued, when asked by this court whether Mr. Bailey had a duty, as defense counsel, to assist in the repatriation of the European assets:

Okay. If the government—once he forfeits it and divests himself of it, end of story. But it doesn't require Mr. Bailey to fly to Europe, to take the responsibility of the up-and-down value of the stock to take out loans himself, to fund this. So, yes, in a general sense, his responsibility is to make sure the government knows what it is and gets it, but he asked—he responded to the government's request to go for—it misses the tripartite contract. You know, there's three parties here, and all three of them wanted him to do it—Bailey, Duboc, and the government.

Mr. Bailey's services in the repatriation of the European property went beyond normal criminal representation duties. The proposed discovery on the alleged agreement did not take place, nor did the proposed hearing on Mr. Bailey's breach claim take place during the forfeiture proceeding, which is designed instead to review prior ownership interests and the bona fide, innocent purchaser standards outlined in Section 853. Plaintiff should be offered an opportunity to have the breach of contract allegations reviewed in court and Section 1500 should not operate as a bar to plaintiff's action in this court.

In *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 75 F.3d 648, 653 (Fed.Cir.1996), the Federal Circuit observed that the Richmond, Fredericksburg & Potomac R.R. Co. (RF & P) had filed complaints on the same date in the Eastern District of Virginia and in the Court of Federal Claims, arising from the same operative facts, and asking both courts for essentially the same relief—a declaration that RF & P had the right to develop its property free of restrictions in an earlier agreement between RF & P and the government. With the United States District Court suit pending at the time the Court of Federal Claims suit was filed, the latter court normally would have been without jurisdiction pursuant to Section 1500. Nonetheless, the Federal Circuit noted that:

> However, while the decision of the district court, dismissing RF & P's suit for untimeliness, was on appeal in the Fourth Circuit, RF & P filed an amended complaint in the Court of Federal Claims. In the amended complaint, RF & P now sought money damages for breach of contract and a taking under the Fifth Amendment. The trial judge correctly denied the Government's motion to dismiss the amended complaint for lack of jurisdiction under Section 1500. "For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from the same operative facts, and must seek the same relief." *Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1551 (Fed.Cir. 1994) (in banc). Because the district court suit and the suit in the Court of Federal Claims under the amended complaint did not seek the same relief, 28 U.S.C. § 1500 does not apply. *Dico, Inc. v. United States,* 48 F.3d 1199 (Fed.Cir.1995).

*Id.* Thus, the Federal Circuit determined that declaratory relief sought by RF & P in the United States District Court and the money damages sought in the United States Court of Federal Claims were for different remedies, and that jurisdiction in the latter court was not denied by Section 1500. *See id.* at 657.

The operative facts to be reviewed are not the same in this court's breach of contract claim and the District Court's criminal case and associated forfeiture and accounting for expenses reviews. The statute, 28 U.S.C. § 1500, addresses overlapping pending claims by a "plaintiff or his assignee" in the Court of Federal Claims and in any other court against the United States. The plaintiff did not file essentially the same suit in the Court of Federal Claims while a district court case involving him as plaintiff was still pending. Moreover, the plaintiff could not have adjudicated his alleged breach of contract rights as part of a forfeiture action because contract derived rights over $10,-000.00 against the United States are to be adjudicated in the Court of Federal Claims pursuant to 28 U.S.C. § 1491(a)(1). At the time Mr. Bailey filed his action in the Court of Federal Claims, he was not even in the role of a plaintiff in the District Court case, after withdrawal and dismissal of his forfeiture claim. The court finds, therefore, that the statutory instruction of Section 1500 and a reading of the case precedent should not bar adjudication of plaintiff's claim in this court. Defendant's Section 1500 argument is denied.[4]

## II. *Res Judicata*

■ Defendant renews the argument from its earlier motion to dismiss that the plaintiff is barred from prosecuting his claims in the Court of Federal Claims due to the doctrine of *res judicata.* The court addressed and dismissed this contention in its earlier opinion in the above captioned case, when it denied the defendant's earlier motion to dismiss, with the following language:

> The government also argues that Mr. Bailey may not relitigate claims which he already had an opportunity to litigate and

---

4. In its reply brief, defendant also raises the matter of comity, which calls for deference to the first court to exercise jurisdiction over a matter, and permits a subsequent court to decline jurisdiction when a complaint with the same parties and same issues is pending in another court. Defendant notes that the doctrine of comity has effectively been codified in 28 *U.S.C.* § 1500. Comity is not violated in the instant action because the United States District Court is not the appropriate forum to adjudicate a contract claim against the United States over $10,000.00, which must jurisdictionally be litigated in the United States Court of Federal Claims.

which were resolved in the United States District Court with jurisdiction over the *Duboc* criminal case, since it was Mr. Bailey who chose not to pursue a claim for attorneys fees in that court. According to the defendant, when the plaintiff failed to respond to Judge Paul's order giving him until June 17, 1996 to make a claim for attorney fees and expenses based on his representation in the *Duboc* case, he lost his opportunity to make a claim for those fees and expenses. The plaintiff, however, claims that in the instant case he is seeking a remedy under the Tucker Act that was not available to him in the District Court action.

The doctrines of *res judicata* and collateral estoppel were summarized by the United States Supreme Court as follows:

A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and *res judicata*, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies ...." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 42 L.Ed. 355 (1897). Under *res judicata*, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1877); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); 1B J. Moore, Federal Practice ¶ 0.405[1], pp. 621–624 (2d ed.1974)(hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973)(merger); *id.*, § 48(bar). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L.Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15,

1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. *Southern Pacific R. Co., supra*, at 49, 18 S.Ct. 18; *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 61 L.Ed. 1148 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (footnote omitted).

The doctrines of *res judicata* and collateral estoppel operate to prevent the relitigation of a claim that has already had its day in court. *Mark Smith Constr. Co. v. United States*, 15 Cl.Ct. 32, 35–36 (1988). By affording a claimant only one opportunity to obtain redress, the doctrines conserve judicial resources, foster reliance upon judicial decisions, and protect litigants from vexatious and needless litigation. *Id.* at 36; *Martin v. United States*, 30 Fed.Cl. 542, 546, *aff'd*, 41 F.3d 1519 (Fed.Cir.1994) (Table); *Lins v. United States*, 4 Cl.Ct. 772, 777, *aff'd*, 758 F.2d 666 (Fed.Cir.1984) (Table).

As noted earlier in this opinion, this court is not the proper forum in which to determine whether or in what amount Mr. Bailey is entitled to attorneys fees for his representation of Mr. Duboc in the criminal court action in the United States District Court. In the above captioned case, Mr. Bailey, however, has constructed a claim, which at least in part, could not have been brought during Mr. Duboc's criminal proceeding. A contract claim against the United States which requests damages in an amount greater than $10,000.00 must be brought in the United States Court of Federal Claims and cannot be brought in the United States District Court. According to the statute, "[t]he district courts shall have original jurisdiction, concurrent with

the United States Court of Federal Claims, of: ... (2) Any other civil action or claim against the United States, not exceeding $10,000 in amount...." 28 U.S.C. § 1346 (1994); *see Hoopa Valley Tribe v. United States,* 219 Ct.Cl. 492, 496–97, 596 F.2d 435 (1979); *King v. United States,* 182 Ct.Cl. 631, 637 n. 8, 390 F.2d 894 (1968), *rev'd on other grounds,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969) (citing *Ove Gustavsson Contracting Co. v. Floete,* 278 F.2d 912 (2nd Cir.), *cert. denied,* 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 188 (1960)). Neither *res judicata* nor collateral estoppel bars jurisdiction in a case if the claim brought in the second suit could not jurisdictionally have been brought in the first case. The above-captioned case for breach of contract against the United States is properly lodged in this court.

*Bailey v. United States,* 40 Fed.Cl. at 460–61.

Although the defendant tries to renew its *res judicata* argument with a claim of "additional factual developments" which would foreclose jurisdiction in the Court of Federal Claims, and there has been a great deal of activity in the Federal District and Eleventh Circuit courts in the interim, once the dust settled it became clear that the pertinent facts have not materially changed. During oral argument in this court on the defendant's initial motion to dismiss, the plaintiff advised as follows:

> In this Court [the Court of Federal Claims], Your Honor, we do not make a claim for the legal fees. We do not make a claim for the cost of repatriation.
>
> \* \* \* \* \* \*
>
> What we make a claim for, is the fees for repatriation and the appreciated value [of the stock].

In the renewed and pending motion to dismiss in this court, defendant now argues that the United States District Court for the Northern District of Florida previously made a "final adjudication of Mr. Bailey's claim for repatriation expenses and fees allegedly

owed him by the United States." The government relies on the following language excerpted from the United States District Court's consideration of Mr. Bailey's "Motion for Approval of Expenses" in the *Duboc* case. The District Court's order states that:

> Though Bailey does not seek compensation by way of an attorney's fee award, he does seek reimbursement from this Court for $1,585,690.22 in expenses.[5] Bailey claims that this sum was spent during this course of his representation of Duboc, and in service of "the government's needs"
> ....

*United States v. Claude Louis Duboc,* No. 1:94cr9–MP, Order at 3 (N.D.Fla. Oct. 23, 1997). Defendant then proffers a number of pleadings before the United States District Court, and argues that "[o]ne would be hard pressed not to find the 'fees for repatriation' contained in the vast documentation supporting Mr. Bailey's claim, particularly in light of the District Court's opinion, stating that it addressed Mr. Bailey's claim regarding his 'service' to the Government." The expenses submitted and considered (although not fully approved) by the District Court were organized under the following headings: air travel; hotels and meals; rental cars; Mr. Duboc's medical expenses; Mr. Duboc's secretarial services; petty cash for Mr. Duboc's jail account; outside legal fees (to other attorneys who assisted Mr. Bailey in representing Mr. Duboc); telephone, Federal Express and photocopying expenses, and European expenses (for the upkeep and protection of Mr. Duboc's European property). *United States v. Claude Louis Duboc,* No. 1:94cr9–MP, Order at 5 *et seq.* (N.D.Fla. Oct. 23, 1997). In this expense approval order, the District Court appears to have been considering Mr. Bailey's Motion for Approval of Expenses incurred .for Mr. Duboc's care and feeding and for the protection and repatriation of the European property, with such expenses being in the government's interest, and not the question of compensation due to Mr. Bailey personally for his repatriation activities pursu-

---

5. The District Court's order stated in a footnote at this point:

> This figure represents the aggregate total of all items listed by Bailey on the Final Sum-

mary of Expenses which he submitted to the Court as an attachment to his Memorandum of Respondent Regarding Supplemental Summary of Expenses ....

ant to the alleged agreement, which forms the basis for the breach of contract action brought by plaintiff in the above captioned case.

Defendant also highlights the words of the dismissal of plaintiff's claim made under the forfeiture statute, 28 U.S.C. § 853(n), and issued by the District Court on May 17, 1996, following submission to the court of the stipulation of the plaintiff and the United States to dismiss plaintiff's forfeiture petition, which held:

That the respondent, F. Lee Bailey, take nothing, that the action be dismissed with prejudice. The United States of America is determined to be the fee simple owner of all the assets that formed the res of the subject forfeiture action, free and clear from all claim of right, title, or interest that F. Lee Bailey, his heirs, devisees, or assigns, may heretofore or hereafter have claimed or asserted in or to such assets or proceeds derived therefrom.

*United States v. Bailey*, No. GCR 94–01009–MMP, Judgment at 1 (N.D.Fla. May 17, 1996). Based on this language, the defendant argues that:

Given the language of the district court's order, it is clear that Mr. Bailey seeks to relitigate here issues that have been decided—finally and by stipulation—before the district court. Plaintiff's claim, that because he alleges a breach of contract claim his case is not barred by res judicata, is devoid of support in fact or law. The short answer to this argument is that final judgments are not subject to reopening simply because one changes the label of the relief sought—much more is required.

The defendant characterizes the plaintiff's amended complaint as an "impermissible collateral attack on the district court's orders."

The relitigation of claims by collaterally attacking earlier rulings is barred by the doctrine of *res judicata*. *MGA, Inc. v. General Motors Corp.*, 827 F.2d 729, 731 (Fed. Cir.1987), *cert. denied*, 484 U.S. 1009, 108 S.Ct. 705, 98 L.Ed.2d 656 (1988). The government argues that, prior to the dismissal, the District Court had formulated the con-

tract issue to be addressed in an upcoming hearing, and had agreed to permit the plaintiff additional discovery on the issue. The contract issue, however, never was reviewed or adjudicated directly by the District Court, even in the Section 853(n) proceeding, due to the parties' stipulation of dismissal and the court's resulting judgment of dismissal of Mr. Bailey's third party claim under the forfeiture statute.

Defendant relies on *Phoenix Petroleum Co. v. United States*, 40 Fed.Cl. 862, 867 (1998), *rev'd*, 1999 WL 521189 (Fed.Cir. July 23, 1999) (Unpub.),[6] for the proposition that "[a] voluntary dismissal with prejudice is considered a final judgment on the merits for purposes of *res judicata.*" Defendant also cites *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, which states that "principles of merger and bar may apply even though a judgment results by ... dismissal with prejudice although care must be taken to insure the fairness in doing so." *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d 1305, 1314 (Fed.Cir.1983); *see also Mosely v. United States*, 15 Cl.Ct. 193, 194 (1988). The plaintiff agrees that "[a] dismissal with prejudice may constitute a final judgment for purposes of *res judicata,*" but argues that in the instant case, the stipulation to dismiss with prejudice went to the 21 U.S.C. § 853 forfeiture claim, and not to plaintiff's contract claim brought before the Court of Federal Claims.

Despite defendant's reliance on the cases, the doctrine of *res judicata* did not operate to bar the subsequent proceedings in the three cases cited by the defendant. *See Phoenix Petroleum Co. v. United States*, 40 Fed.Cl. at 867, *rev'd*, (Table), 1999 WL 521189 (Unpub.); *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n*, 721 F.2d at 1317; *Mosely v. United States*, 15 Cl.Ct. at 197. In *Mosely*, the government canceled an oil and gas lease it had issued to the plaintiff. The plaintiff filed suit in Federal District Court pursuant to the Administrative Procedure Act, alleging that the cancellation was arbitrary and capricious. Howev-

---

**6.** The trial court's conclusion in *Phoenix Petroleum* that the suit was barred by *res judicata* was

reversed by the United States Court of Appeals for the Federal Circuit.

er, prior to any District Court resolution, the plaintiff and the government stipulated to a dismissal, with prejudice. *Id.* at 193–94. Thereafter, the plaintiff in *Mosely* filed an action in the Court of Claims, alleging breach of contract and takings theories, seeking damages in excess of $10,000.00. *Id.* at 194–95. The government raised *res judicata* as a bar to the action in the Court of Federal Claims. As the Federal Circuit did in *Young Engineers,* the court in *Mosely* relied on the Restatement (Second) of Judgments. *See Young Eng'rs, Inc. v. United States Int'l Trade Comm'n,* 721 F.2d at 1314 ("In our analysis we will be guided by the Restatement (Second) of Judgments (1982)...."). The court in *Mosely* noted that:

Restatement § 26 provides the following exception to [the bar of res judicata]:

(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

\*     \*     \*     \*     \*     \*

(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts ....

Consequently, when there are statutory restrictions on the type of claim a person may bring in the first action, later litigation of the restricted claims in a different forum is not precluded; the cause of action in the second law suit would necessarily be different than the original cause of action. The Restatement explains the policy behind this principle:

The general rule of § 24 is largely predicated on the assumption that the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law. When such formal barriers in fact existed and were operative

against a plaintiff in the first action, it is unfair to preclude him from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.

Restatement § 26 comment c, quoted in *Young Eng'rs, Inc. v. United States Int'l Trade Comm'n,* 721 F.2d 1305, 1315 (Fed. Cir.1983). The Supreme Court has also adopted this principle, *see Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 382, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985), as has this court, *see Rowe v. United States,* 4 Cl.Ct. 39, 43 (1983); *Huntley v. United States,* 4 Cl.Ct. 65, 68 (1983). In the case at bar, statutory limitations on the subject matter jurisdiction of the district court prevented plaintiff from bringing his present claim in that forum. Plaintiff's complaint falls within the scope of the exception to the general rule; therefore, dismissal on the ground of claim preclusion is not warranted.

*Mosely v. United States,* 15 Cl.Ct. at 195. *See also Bio–Technology General Corp. v. Genentech, Inc.,* 80 F.3d 1553, 1563–64 (Fed. Cir.1996) (citing the Restatement (Second) of Judgments § 26(1)(c) comment c and finding against claim preclusion), *cert. denied,* 519 U.S. 911, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996); *Golden Pacific Bancorp v. United States,* 15 F.3d 1066, 1071 (Fed.Cir.1994) ("Moreover, the taking claim could not have been litigated, in the district court action, in view of the fact that the district court lacked subject matter jurisdiction over Golden Pacific's taking claim because it was a non-tort monetary claim exceeding $10,000. Accordingly, Golden Pacific's taking claim is not barred by the doctrine of res judicata because the suit before the Claims Court was not based upon the same claim as the suit before the district court.") (citation omitted), *cert. denied,* 513 U.S. 961, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *Martin v. United States,* 30 Fed.Cl. 542, 546 (1994), *aff'd,* 41 F.3d 1519 (Fed.Cir.1994) ("In this court, Martin seeks a Tucker Act remedy which was unavailable to him in the earlier district court lawsuit; consequently, the cause of action presently in this court is dissimilar and res judicata can-

not apply."). Similarly, the plaintiff in the above captioned case seeks a remedy under the Tucker Act unavailable in the action proceeding in the United States District Court for the Northern District of Florida.

In addition, defendant cites *Bowman v. United States*, 35 Fed.Cl. 397, 402 (1996), for the proposition that: "The Court of Federal Claims may review the determinations of other tribunals under limited circumstances, where such jurisdiction is provided by statute." Defendant then advises that there is no statute "conferring jurisdiction upon [the Court of Federal Claims] to review the district court's orders ...." This court should not review the District Court's determinations on the criminal adjudication of Mr. Duboc, criminal forfeiture under 21 U.S.C. § 853, or the expenses awarded to Mr. Bailey by the District Court Judge; for that matter, appropriate review of the District Court determination has already occurred in the proper forum, the United States Court of Appeals for the Eleventh Circuit. This court, however, is being asked to adjudicate a contract claim exceeding $10,000.00 under the jurisdictional authority of the Tucker Act. In *Bowman*, the plaintiff brought a takings claim in the Court of Federal Claims to challenge a District Court award of the very same property to the government under the civil forfeiture statute, 21 U.S.C. § 881(a)(6). *Id.* at 398. The claim in this court, however, is not being brought as a collateral attack by the criminal defendant, in this case Mr. Duboc, who in fact stipulated to the forfeiture to the government of the 602,000 shares of Biochem Pharma stock as indicated in the District Court's order of March 22, 1996. Had Mr. Duboc brought a takings claim in the Court of Federal Claims to challenge the District Court's forfeiture of his property under the criminal forfeiture statute, the reasoning in *Bowman* would provide a theory to dismiss the action.

As another example, defendant suggests reliance on *Scarano v. United States*, 34 Fed.Cl. 775, 776 (1996), wherein the plaintiff, unlike Mr. Bailey, similarly, was analogous to Mr. Duboc and sought to have the property forfeited in District Court returned on a takings theory in the Court of Federal Claims. Further, defendant offers the cases of *Meincke v. United States*, 14 Cl.Ct. 383, 385 (1988), in which the court found the plaintiff was collaterally attacking a forfeiture action, but which also does not involve a contract claim, and *Bernaugh v. United States*, 38 Fed.Cl. 538, 542 (1997), *aff'd*, 168 F.3d 1319 (1998) (Table), in which the plaintiff brought a takings claim in the Court of Federal Claims, dismissed by the court with the following language:

> Numerous cases in this court have held that a valid forfeiture under 21 U.S.C. § 881 is regulatory in nature and does not implicate the takings clause. . . .
>
> In addition, plaintiff maintains that the alleged taking was the result of unlawful federal activity. Plaintiff contends that the seizure and forfeiture of his jewelry and cellular telephone were "illegal." However, to state a takings claim in this court, plaintiff must concede the lawfulness of the government action that resulted in the alleged taking. . . .

*Id.* at 542 (citations omitted). These takings example issues and their disposition are not dispositive in the case at bar.

Defendant also cites *Lark v. United States* 17 Cl.Ct. 567 (1989). In *Lark*, the court disposed of the plaintiff's claim for forfeited currency under the Fifth Amendment with these words: "It is well settled that '[t]his court has no jurisdiction over claims based upon the Due Process and Equal Protection guarantees of the Fifth Amendment, because these constitutional provisions do not obligate the Federal Government to pay money damages.' *Carruth v. United States*, 224 Ct.Cl. 422, 445, 627 F.2d 1068, 1081 (1980)." *Id.* at 569. The *Lark* court then turned to the plaintiff's allegation that jurisdiction in the Claims Court was based on an implied contract between plaintiff and the government:

> Plaintiff asserted that defendant's seizure of his money created some sort of an implied contract on the part of the government to pay the money back. Implied-in-fact contracts require the same mutuality of intent, offer and acceptance, and a showing that the agent whose conduct is relied upon had actual authority to bind the gov-

ernment as do express contracts.... Plaintiff failed to demonstrate the existence of any of these essential elements. It is apparent to the court that no implied-in-fact contract existed between plaintiff and defendant. The court thus finds plaintiff's contractual argument to be without merit.

\*   \*   \*   \*   \*   \*

It is apparent that plaintiff's cause of action is not properly before this court. Furthermore, the court views plaintiff's claims as a collateral attack on the District Court's prior decision. There is little dispute that this court's jurisdiction does not extend to the review of substantive actions taken by other federal courts. Plaintiff's vague complaint implied that since the District Court's decision was in error, he was justified in bringing the same cause of action before this court. Such matters are barred by the doctrine of res judicata, which precludes the court from hearing an action involving the same parties, facts, and issues as an action finally decided, on the merits, by a court of competent jurisdiction. If plaintiff felt that the district court decision was in error, his proper remedy was to seek review on appeal.

*Id.* at 570, 571 (citations omitted).

In addition, the defendant tries to rely on *Golder v. United States*, 15 Cl.Ct. 513 (1988). In *Golder*, the plaintiffs argued that the government's forfeiture action against their property was improper; the District Court agreed, and also approved a settlement agreement between the Golders and the holder of a security interest in the forfeited property, which was an aircraft, *Id.* at 516. The Golders returned to the same District Court for damages arising from the improper seizure and release of the aircraft to the holder of the security interest. After the District Court found that it had no jurisdiction over plaintiff's claim against the United States exceeding $10,000.00 and that the statute of limitations on plaintiffs' tort claim had run, the plaintiffs filed suit against the United States for monetary damages, alleging a violation of their rights under the Fifth Amendment. *Id.* at 516. The Claims Court concurred with the District Court's analysis:

Under the doctrine of res judicata a final judgment made by a competent court on a cause of action is a complete bar and is conclusive on that claim when raised in a subsequent suit in which the identity of the parties is the same. This rule extends to bind parties on any causes of action which should have been raised in the prior suit in addition to those actually litigated. In the present action plaintiffs claim a violation of their Fifth Amendment rights, whereas, in the government instituted forfeiture action the only issue before the court was the propriety of the forfeiture. A claim for recovery under the Fifth Amendment takings clause could not have appropriately been raised in that action. Thus, the doctrine of res judicata is also inapplicable in the present action.

*Id.* at 517–18 (citations omitted). The Claims Court then proceeded to decide the takings issue against the plaintiff on summary judgment motion. *Id.* at 518–19.

Perhaps explaining why the defendant relied on this case, the court also distinguished what matters decided by the District Court may not be collaterally attacked in the Court of Federal Claims:

Furthermore, plaintiffs are bound by the New York District Court's approval of the release of the aircraft to GECC–TN [the security interest holder], and the Arizona District Court's approval of the settlement agreement for the balance due on plaintiff's note for the purchase money loan, to which plaintiffs filed no objection. For this court to find that the aircraft was wrongfully released by the government would necessarily contradict the actions of these district courts. The Claims Court, as a federal trial court, has no jurisdiction to review the actions of other federal courts. Therefore, this court cannot relieve plaintiffs of the New York and Arizona District Courts actions.

*Id.* at 519 (citations omitted).

Based on its reading of the cases cited, and on the District Court's order, which held: "Now, by the filing of the 'Stipulation for Dismissal with Prejudice,' Mr. Bailey has withdrawn his right to pursue his claim for

the stocks, or the proceeds thereof; he is hereafter estopped from asserting such claim now or in the future, not only in this forum, but in any other forum," *United States v. Duboc*, No. GCR 94–01009–MMP, Order at 1–2 (N.D.Fla. May 17, 1996), the defendant argues that the District Court has precluded Mr. Bailey from pursuing his contract claim in the Court of Federal Claims. The stipulation, in which "Petitioner F. Lee Bailey, by counsel, and the United States hereby stipulate that the petition filed in this matter on or about April 24, 1994, by petitioner pursuant to 28[sic] U.S.C. § 853(n) shall be dismissed with prejudice," and the subsequent order and judgment issued by Judge Paul, all signed on May 17, 1996, however, were entered as part of the forfeiture proceeding pursuant to 21 U.S.C. § 853, in the *Duboc* case. The reach of a party's stipulation and a district court's order must be defined by the context and the case in which they are submitted and signed. The District Court order and judgment established the forfeiture and ownership of the 602,000 shares of Biochem Pharma stock from Mr. Duboc to the government. The order and judgment did not address the existence or terms of a contractual agreement between plaintiff and the United States, which would be at issue in the Court of Federal Claims action if jurisdiction is found to be validly placed in this court.

Defendant argues that the language in the plaintiff's complaint reflects that "Mr. Bailey is merely attempting to collaterally attack the district court's orders prohibiting him from pursuing his claim for the stock or proceeds thereof in any other forum rather than allege a separate and distinct claim. . . . " The language of the factual background section of the amended complaint understandably discusses the property, including the Biochem Pharma stock, subject to the criminal forfeiture action in District Court. The inclusion of such language does not, in and of itself, however, render the amended complaint an attack on the District Court's judgment of forfeiture. The amended complaint contains two counts, one for breach of an express contract and the second

for breach of an implied-in-fact contract, and asserts that the amount in controversy exceeds $10,000.00. The plaintiff's complaint falls within the Court of Federal Claims' Tucker Act jurisdiction.

Defendant also argues, in a footnote to its brief, that:

> Should the Court find that Mr. Bailey had a contract to render services for the United States, defendant requests the Court to dismiss this claim for lack of jurisdiction because this alleged contract for Mr. Bailey's services would be subject to the Contract Disputes Act ("CDA"). 41 U.S.C. § 602(a)(3) (CDA applies to any express or implied contract for "the procurement of services").

The record before the court does not suggest the existence of a certified claim submitted to a contracting officer for a contracting officer's final decision, as would be required for a government contract claim subject to the Contract Disputes Act. 41 U.S.C. § 605(a), (c) (1994 & Supp. Ill 1997), *see Alliant Techsystems, Inc. v. United States*, 178 F.3d 1260, 1264 (Fed.Cir.1999), *reh'g denied*, 186 F.3d 1379 (Fed.Cir.1999); *Newport News Shipbuilding & Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1550 (Fed.Cir.1993), *reh'g denied* (1994); *United States v. Grumman Aerospace Corp.*, 927 F.2d 575, 579 (Fed.Cir. 1991), *cert. denied*, 502 U.S. 919, 112 S.Ct. 330, 116 L.Ed.2d 270 (1991).

At oral argument on the current motion to dismiss, plaintiff submitted that the Contract Disputes Act did not apply:

> Your Honor, thank you very much. In the initial briefs, we looked at this argument. It was our opinion it should not be raised at that time, because we felt the Contract Dispute[s] Act did not apply for the scheme there. This is indigenous to the Tucker Act jurisdiction of this Court.

At the same oral argument on the defendant's instant motion to dismiss, the defendant appeared to agree with the plaintiff, that the CDA does not apply to the plaintiff's case, citing *Janowsky v. United States*, 23 Cl.Ct. 706, 709–11 (1991), *rev'd*, 989 F.2d 1203 (Fed.Cir.1993) (Table).[7] As suggested

---

7. During the oral argument on the pending mo-

tion to dismiss in the above captioned case, both

by defendant's counsel, in *Janowsky*, the trial court's conclusion that the CDA applied to the plaintiffs' claim for breach of an implied-in-fact contract in which the government recruited Mr. Janowsky to assist in infiltrating and collecting information on organized criminal activity was reversed by the United States Court of Appeals for the Federal Circuit.

The Contract Disputes Act provides as follows:

§ 602.  Applicability of law

(a)  Executive agency contracts

Unless otherwise specifically provided herein, this chapter applies to any express or implied contract ... entered into by an executive agency for—

(1) the procurement of property, other than real property in being;

(2) the procurement of services;

(3) the procurement of construction, alteration, repair or maintenance of real property; or,

(4) the disposal of personal property.

41 U.S.C. § 602(a).

The complaint alleges an express or implied contract for "services" provided to an executive agency, but, as in *Janowsky*, that is not the end of the analysis.  The Federal Circuit has observed for many years that the CDA "does not cover all government contracts." *Coastal Corp. v. United States*, 713 F.2d 728, 730 (Fed.Cir.1983) (an implied contract to treat bids honestly and fairly is not a contract for the procurement of goods or services under the CDA).  *See also Dalton v. Sherwood Van Lines*, 50 F.3d 1014, 1017 (Fed.Cir.1995) ("Congress did not intend the Contract Disputes Act to apply to GBL [Government Bill of Lading]-based transportation services of the sort at issue in these cases."); *Boggs & Assocs., Inc. v. Roskens*, 969 F.2d 1023, 1028 (Fed.Cir.1992) (the CDA did not apply to host country contracts adopted by the Agency for International Development because the contracts were not for the direct benefit or use of the federal government).  *See also Woll v. United States*, 45 Fed.Cl.

475, 480 (1999) (the contract, which was essentially a collaborative testing effort, did not come within the purview of the CDA).  *Cf. Ervin and Assocs., Inc. v. United States*, 44 Fed.Cl. 646, 654 (1999) ("The relationship between plaintiff and HUD was plainly a buyer-seller relationship—not one of collaborative partners.  Each of their agreements came as a result of a competitive bidding process and required the expenditure of government funds.  These are the hallmarks of a CDA contract.").

In *Institut Pasteur v. United States*, 814 F.2d 624 (Fed.Cir.1987), in which the court found the implied contracts for scientific collaboration not within the purview of the CDA, the United States Court of Appeals for the Federal Circuit wrote:

Even where a statute [the CDA] is clear on a purely linguistic level, interpretation may be necessary if that interpretation does not do justice to the realities of the situation.  As stated by the Supreme Court in *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 512, 36 L.Ed. 226 (1892), it is a "familiar rule that a thing may be within the letter of the statute, but not within its spirit nor within the intention of its makers." *Texas State Comm'n for the Blind v. United States*, 796 F.2d 400, 406 (Fed.Cir. 1986).

To determine whether the applicability of the CDA to the pleaded contracts is within the intention of Congress, we must look to the purpose of the Act and its legislative history.

The CDA is an implementation of recommendations made by the Commission on Government Procurement, created by Congress in 1969, to promote economy, efficiency, and effectiveness in the procurement of goods, services and facilities by and for the executive branch of the Federal Government by—

(1) establishing policies, procedures, and practices which will require the Government to acquire goods, services, and facilities of the requisite quality and within

---

parties were offered an opportunity to brief the applicability of the CDA. Neither party submitted

any assistance to the court.

the time needed at the lowest reasonable cost, utilizing competitive bidding to the maximum extent practicable . . . .

Pub.L. No. 91–129, § 1, 83 Stat. 269, as amended by Pub.L. No. 92–47, 85 Stat. 102. As stated in the Senate Report on the CDA

Both [the economy of our society and the success of many major Government programs][8] can be affected by the existence of competition and quality contractors—or by the lack thereof. The way potential contractors view the disputes-resolving system influences how, whether, and at what prices they compete for. Government contract business.

S.Rep. No. 1118, 95th Cong., 2d Sess. (1978), reprinted in 1978 U.S.Code Cong. & Admin. News 5235, 5238.

Such policy considerations relating to cost and competition have no application, however, to the pleaded contracts.

*Institut Pasteur v. United States,* 814 F.2d at 627.

The "realities of the situation" in the instant case, and the procurement policies underlying the CDA, lead to the conclusion that the alleged agreement also falls outside the reach of the CDA, although within Tucker Act contract jurisdiction. The record does not reflect that Mr. Bailey holds himself out as a normal government contractor in the repatriation business, either before or after the isolated instance which forms the basis for the complaint. Mr. Bailey's involvement as counsel in the underlying criminal matter involving Mr. Duboc and the need to act quickly to identify and secure the potentially forfeitable property appear to have led to the alleged arrangement between Mr. Bailey and the government. This alleged oral agreement did not stem from competitive bidding, could not have been competitively bid to secure quick and effective assistance, and was not made subject to the disputes clause, or to any other Federal Acquisition Regulation clauses. The situation here is analogous to the one described in *Institut Pasteur,* in which the court wrote—

Finally, application of complex, burdensome, and inevitably time-consuming procurement regulations to the type of scientific collaboration here involved would "not do justice to the realities of the situation." *Texas State Comm'n For The Blind,* 796 F.2d at 406. The exchange of information and perishable biological products among scientists engaged in collaborative research relating to deadly diseases such as AIDS should not be required to await compliance with procurement regulations such as those requiring a documented determination by a contracting officer that the contractor (here, Pasteur) is "responsible," 41 C.F.R. §§ 1–1.12, 3–1.12 (1983), or a written justification for contracting on a noncompetitive basis, 41 C.F.R. §§ 1–1.318–7, 1–7 (1983).

*Id.* at 628. The concepts surrounding a government solicitation, bid responsiveness, contractor responsibility, and the requirements for noncompetitive procurements do not appear to have played any role in this alleged agreement. Nor were appropriated funds to be utilized in this effort. *See* 48 C.F.R. Parts 6, 9, 14, 15, 33 (Oct. 1, 1993). As the Federal Circuit noted in *Boggs,* "the policy rationale behind the Contract Disputes Act, designing an efficient disputes resolution system to encourage quality contractors to competitively provide goods and services to the U.S. government, is neither impaired nor promoted by excluding these contracts from the Act. *See Pasteur,* 814 F.2d at 627." *Boggs & Assocs. v. Roskens,* 969 F.2d at 1028.

The alleged agreement appears to have been more of a collaborative effort between the government and Mr. Bailey to rapidly accomplish what was necessary in the attempt to repatriate overseas property, rather than a standard procurement of goods and services subject to the CDA. *See Institut Pasteur v. United States,* 814 F.2d at 628; *Woll v. United States,* 45 Fed.Cl. at 480; *Ervin and Assocs., Inc. v. United States,* 44 Fed.Cl. at 653. Mr. Bailey appears to have been afforded considerable and intentional maneuvering room by the government, unencumbered by normal FAR clauses, constraints and policies, in order to facilitate a

---

8. Alteration in original.

unique and even delicate effort, and to utilize Mr. Bailey's unique knowledge and relationship. Drawing once again on language from *Institut Pasteur*, the "application of complex, burdensome, and inevitably time-consuming procurement regulations" would not have done justice to the "realities of the situation," in this case the timely and perhaps delicate repatriation of overseas forfeitable property. *Institut Pasteur v. United States*, 814 F.2d at 628. For the foregoing reasons, the court agrees with the posture of the parties at oral argument, that the CDA is not applicable to the alleged agreement.[9]

Finally, defendant argues that the plaintiff has already been paid for his services in connection with the repatriation of the European property, pointing to the District Court's order on Mr. Bailey's Motion for Approval of Expenses. *United States v. Duboc*, No. 1:94cr9–MP ( N.D. Fla. Oct. 23, 1997). The expenses approved by the District Court were discussed earlier, and contain no fees for Mr. Bailey's repatriation work. Nor has the defendant directed the court's attention to any portion of this detailed, 32–page District Court order which explicitly addresses fees for Mr. Bailey's work in the repatriation of the European property.

Summarizing, the Court of Federal Claims recognizes that it is without jurisdiction to review forfeiture decisions of the Federal District Court under the criminal forfeiture statute, 21 U.S.C. § 853. Similarly, the District Court is without jurisdiction to review a contract claim in excess of $10,000.00. 28 U.S.C. § 1491. At issue in this case captioned in Mr. Bailey's name is whether the government did or did not agree to compensate the plaintiff, as alleged, to assist in the repatriation efforts of the foreign assets of a criminal defendant. One might question the wisdom of all the individuals who transferred the 602,000 shares of Biochem Pharma stock as a projected method of payment, if the alleged contract is found to be valid. But in this court's proceedings the ownership of the stock, now long since sold, and the forfeiture determinations reached by the District Court are not at issue. The District Court determined that the stock was forfeited by defendant Duboc to the United States and that Mr. Bailey could not claim an ownership right under the forfeiture statute. The District Court did not review or address whether or not Mr. Bailey was owed money for his repatriation efforts or whether the alleged agreement between Mr. Bailey and the United States Department of Justice had come into being. Therefore, the doctrine of *res judicata* does not bar the plaintiff's claim before the United States Court of Federal Claims. *Note Kearns v. General Motors Corp.*, 94 F.3d 1553, 1557 (Fed.Cir.1996) ("[P]recedent weighs heavily against denying litigants a day in court unless there is a clear and persuasive basis for that denial."), *cert. denied*, 520 U.S. 1186, 117 S.Ct. 1469, 137 L.Ed.2d 682 (1997).

### III. 21 U.S.C. § 853

The defendant also argues that relief under the criminal forfeiture statute as a third party claimant[10] was Mr. Bailey's sole

9. Although not pertinent to the determination of whether of not the CDA applies, the court notes the probable futility of Mr. Bailey filing a claim with the Department of Justice, were the CDA found to be applicable. The claim under the CDA would have to be filed with the very government agency statutorily responsible for defending the pending claims. 28 U.S.C. § 516 (1994) ("... [T]he conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General.") *Note Sharman Co., Inc. v. United States*, 2 F.3d 1564, 1571 (Fed.Cir.1993) ("Once a claim is in litigation, the Department of Justice gains exclusive authority to act in the pending litigation."), *overruled in part on other grounds*, *Reflectone, Inc. v. Dalton*, 60 F.3d 1572 (Fed.Cir.

1995), *reh'g denied*. Given the litigation posture of the defendant that the Department of Justice did not enter into the agreement as alleged with the plaintiff, it would certainly appear futile for the plaintiff to appeal to that same agency to administratively review the claim as a prerequisite to court action.

10. In an order dated May 9, 1996, the District Court observed that, "[a]s Bailey is neither the Government nor the defendant from whom the Biochem shares were forfeited, he is a 'third party' claimant of the stock for purposes of § 853 analysis. *See* 21 U.S.C. § 853(c) and (n). This classification carries with it a number of consequences. Prominent among those, and pertinent to the present motion, is that Bailey—a third party claimant—is estopped from intervening in

recourse, and a recourse exhausted by the plaintiff's stipulation of dismissal and the District Court's subsequent order and judgment, all dated May 17, 1996, in the forfeiture action, which was part of the *Duboc* criminal case. The defendant maintains that the District Court actions should prohibit Mr. Bailey from adjudicating any claim to the Biochem Pharma stock or the proceeds thereof in another forum, such as this court. As noted earlier, in response to the stipulation of dismissal submitted by Mr. Bailey's counsel in the 853 proceeding, the District Court ordered that "Mr. Bailey has withdrawn his right to pursue his claim for the stocks, or the proceeds thereof; he is hereafter estopped from asserting such claim now or in the future, not only in this forum, but in any other forum." *United States v. Duboc,* No. GCR 94–01009, Order at 1–2 (N.D.Fla. May 17, 1996). However, in this District Court order of May 17, 1997, the claim of Mr. Bailey being dismissed is clearly his third party claim pursuant to 21 U.S.C. § 853(n)(2), such that the claim defendant refers to which cannot be brought "in any. other forum," including the Court of Federal Claims, is the third party claim pursuant to Section 853(n). *Id.* at 2, 3. In this court, the plaintiff does not seek to review the District Court's Section 853(n)(2) order. Moreover, ownership of the now long since sold Biochem Pharma stock also is not the recovery sought in the instant law suit.

Defendant states that, "because Congress placed jurisdiction to entertain third party claims in the district courts, [the Court of Federal Claims] lacks jurisdiction to entertain Mr. Bailey's third party claim, even though he may be alleging a breach of con-

tract." Defendant relies on *Puget Sound Power & Light Co.* for this proposition, and the following language from that case:

Accordingly, even if a claim asserted in a complaint is assumed to be one founded upon a contract or a legal provision, which can be construed fairly as mandating the payment of monies sought, and thus nominally within the jurisdiction of this Court pursuant to the Tucker Act, it is well established that this Court will lack jurisdiction to entertain that claim if Congress has expressly placed jurisdiction over that claim elsewhere.

*Puget Sound Power & Light Co. v. United States,* 23 Cl.Ct. 46, 58–59 (1991), *appeal dismissed,* 944 F.2d 912 (Fed.Cir.1991) (Table), *cert. denied,* 502 U.S. 1091, 112 S.Ct. 1160, 117 L.Ed.2d 408 (1992). In *Puget Sound,* the court noted that the Northwest Power Act, 16 U.S.C. § 839–839h, provided for the exclusive judicial review of agency final actions (involving sales of electrical power by the Bonneville Power Administration (BPA)) in the United States Court of Appeals for the Ninth Circuit. *Id.* at 55. The plaintiff in *Puget Sound* brought a breach of contract claim in the United States Claims Court. The Claims Court opinion identified the central issue to be whether "the plaintiff's claim for breach of contract, is, in effect, a challenge to a final action of the Administrator of [the BPA], i.e., the sale of surplus electric power out of the region or implementation thereof which removes the claim from the jurisdiction of this Court [and places it in the Ninth Circuit]." *Id.* at 60. The Claims Court concluded that "the true nature of Puget's claim is a challenge to [the agency's] extraregional power sales under the North-

---

the trial or appeal of the criminal case involving the forfeiture of the asset he is claiming as his own. 21 U.S.C. § 853(k)." At this point the Order contained the following footnote:

The Court notes that a second consequence which emanates from the classification of Bailey as a third party claimant under § 853 is that Bailey's claim to ownership of the stock proceeds will necessarily be governed by § 853(n). The Biochem stock has already been forfeited to the Government. As explained, Bailey has no standing to challenge and/or appeal this Court's order of forfeiture. The judicial recourse—that is, the sole judicial recourse—which has been provided by Con-

gress to one in Bailey's shoes is an adjudication pursuant to § 853(n). 21 U.S.C. § 853(c). *See, also, Libretti v. U.S.,* 516 U.S. 29, 116 S.Ct. 356, 365, 133 L.Ed.2d 271 (1995) (rejecting argument that trial court must engage in factual basis inquiry prior to accepting stipulation as to forfeiture of assets because defendant may have no practical incentive to challenge factual basis for criminal forfeiture). As the Supreme Court noted in its recent *Libretti,* opinion, "Congress has determined that § 853(n) ... provides the means by which third party rights must be vindicated." *United States v. Duboc,* No. GCR 94–01009–MMP, Order at 8–9 (N.D.Fla. May 9, 1996).

west Power Act ...," and granted the government's motion to dismiss for lack of jurisdiction. *Id.* at 59, 67. The Claims Court opinion in *Puget Sound* also discussed a Ninth Circuit opinion, *Public Utility District No. 1 of Clark County v. Johnson,* 855 F.2d 647 (9th Cir.1988), in which the Ninth Circuit had determined that it was without jurisdiction over claims which were breach of contract claims, not challenges to final agency action, which should be adjudicated in the Claims Court:

> The [United States Court of Appeals for the Ninth Circuit] analyzed its jurisdiction to review these claims, and concluded that the Ninth Circuit had jurisdiction to review any challenges to final agency action but that the Claims Court had exclusive jurisdiction to review the alleged breach of an oral or implied-in-fact contract for money damages exceeding $10,000.
>
> In so concluding, the court distinguished between its exclusive jurisdiction over challenges to final agency action under the Northwest Power Act and the Claims Court's jurisdiction to review breach of contract claims against the United States in excess of $10,000. 855 F.2d at 650. The court explained that one must "determine jurisdiction by looking to the nature of the conduct challenged rather than the label given the cause of action." *Id.* at 649. The relevant issue, therefore, is whether the claimant's action is based upon a final action under the Northwest Power Act, not whether the claimant has simply characterized its claim as one for breach of contract and for money damages, as Puget asserts. E.g., *id.*
>
> In *Clark County,* the [Ninth Circuit] determined that it lacked jurisdiction to entertain the breach of contract claim in that case because "the principal conduct of the agency on which petitioner's claim is based is not final action taken pursuant to statutory authority; it is alleged contractual commitments made outside the scope of any administrative record, and which petitioners contend have been breached." *Id.*

at 650. This determination distinguishes *Clark County* from the case at bar. Here, Puget's claim is directly based upon a final action taken pursuant to statutory authority.

*Puget Sound Power & Light Co. v. United States,* 23 Cl.Ct. at 65–66.[11] *See also Hatzlachh Supply Co., Inc. v. United States,* 444 U.S. 460, 462–64, 100 S.Ct. 647, 62 L.Ed.2d 614 (1980) (holding that the Federal Tort Claims Act, 28 U.S.C. § 2680, "does not limit or otherwise affect immunity waivers contained in other statutes such as the Tucker Act, which invests the Court of Claims with jurisdiction to render judgment 'upon any claim against the United States founded ... upon any express or implied contract with the United States.' "); *Whitney Benefits, Inc. v. United States,* 752 F.2d 1554, 1558 (Fed. Cir.1985) (holding that the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1260(b)(5), "is not a mandatory remedy but is optional with the landowner, who retains also the option to sue in the Claims Court for money without such pursuit."); *but cf., Brown v. General Services Administration,* 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) (finding that congressional intent in enacting the Equal Employment Act of 1972, "was to create an exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination."); *McClary v. United States,* 775 F.2d 280, 282 (Fed.Cir.1985) (holding that, "[w]here an employee is provided a means of redress under the CSRA [Civil Service Reform Act] that is an appeal to the Board the employee does not have an independent cause of action in the Claims Court.").

The criminal forfeiture statute provides:

(c) Third party transfers

All right, title, and interest in ... [forfeited property] vests in the United States upon the commission of the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may

---

11. In *Clark County,* the court continued, "we therefore hold that claims involving alleged contractual breaches by the agency based on allegation of facts outside an administrative record

must be heard in the Claims Court, ...." *Pub. Util. Dist. No. 1 of Clark County v. Johnson,* 855 F.2d at 650.

be the subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

\* \* \* \* \* \*

(i) Authority of the Attorney General

With respect to property ordered forfeited under this section, the Attorney General is authorized to—

(1) grant petitions for mitigation or remission of forfeiture, restore forfeited property to victims of a violation of this subchapter, or take any other action to protect the rights of innocent persons which is in the interest of justice and which is not inconsistent with the provisions of this section; ...

\* \* \* \* \* \*

(k) Bar on intervention

Except as provided in subsection (n) of this section, no party claiming an interest in property subject to forfeiture under this section may—

(1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or,

(2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

\* \* \* \* \* \*

(n) Third party interests

\* \* \* \* \* \*

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. . . .

(3) The petition shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought.

\* \* \* \* \* \*

(6) If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—

(A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;

the court shall amend the order of forfeiture in accordance with its determination.

21 U.S.C. § 853.

Defendant cites to a comment in the legislative history to the forfeiture statute, which is incorporated in the statute at 21 U.S.C. § 853(i)(1).

A third party who fails to obtain relief under the new ancillary hearing provision or who does not file a petition for a hearing *may* seek equitable relief from the Attorney General by filing a petition for remission or mitigation of forfeiture. The Attorney General's decision on such petition shall not be subject to judicial review, as is the case under current law.

Pub.L. No. 98–473, 1984 U.S.C.C.A.N. 3392–97 (emphasis added).

The innocent persons protected by the provisions of Section 853(n)(6) and (i)(1) are

those, unlike Mr. Bailey, with interests in the property prior to the criminal acts which led to its forfeiture, and bona fide purchasers of the property who are innocent of the antecedents of the property. 21 U.S.C. § 853(n)(6)(A), (B). Because 853(i)(1) requires that relief be not inconsistent with the provisions of the section, under both provisions the claimant would have to meet the bona fide purchaser and innocent person standards of the statute. Moreover, neither the statute nor the legislative history appear to require as a necessary, exhaustive step that a claimant must appeal to the Attorney General, either prior to submitting a claim in a criminal forfeiture action or as the alternative to submitting an 853 claim.

In the complaint filed in the Court of Federal Claims, Mr. Bailey has brought a breach of contract claim under the Tucker Act. The plaintiff neither asserts that he owned or had an interest in any of the forfeited property at the time Mr. Duboc committed his criminal acts, nor that he purchased the property as an innocent, unaware that the property was subject to Section 853 forfeiture.[12] Plaintiff engaged in efforts to repatriate high value property in overseas locations, and is alleging a breach of his contract with the government for compensation of those activities and for the increase in the value of property allegedly transferred to him in furtherance of the goals of the alleged agreement. As stated in the amended complaint, "the plaintiff, F. Lee Bailey, demands judgment against the defendant, United States of America, for: 1. an amount adequate to compensate him for his losses, together with interest and costs; and 2. any further relief the Court deems just and proper," under both express and implied-in-fact contract theories. Defendant argues that Section 853 is a "precisely drawn, detailed statute regarding forfeitures and third party claims," which preempts the more general Tucker Act. However, the nature of the plaintiff's alleged claim is not for the forfeited property as a superior owner or bona fide purchaser, but for damages stemming from breach of an express or implied contract with the government. Acknowledging the precision with which the forfeiture statute is drawn, the statute does not encompass plaintiff's allegations.

## CONCLUSION

Both the defendant and the plaintiff have provided comprehensive, thoughtful and

---

12. As noted earlier, in the Federal District Court the government expressed doubt that Mr. Bailey would be able to pursue a successful Section 853(n) third party claim:

> To state a claim under Section 853(n), a third party must allege facts sufficient to demonstrate that he has a legal right, title or interest in specific assets that he acquired as a bona fide purchaser for value without cause to know that the property was subject to forfeiture. Even assuming all of the factual allegations in Bailey's petition are true, as the court must assume for the purposes of this motion, Bailey has not asserted any facts supporting a contention that he "purchased" all 602,000 shares of stock subject to forfeiture. Nor is Bailey able to establish that he was without reason to know that the stock was subject to forfeiture at the time he acquired it. To the contrary, it is well-established that a criminal defense lawyer cannot claim to be the bona fide purchaser of property he knows to be drug proceeds at the time he acquires the property from his client in payment of his fee.

> Bailey attempts to distinguish this rule by asserting that the government promised him that the subject shares of stock would not be forfeited. The government denies that any such representation was ever made. But even assuming for the purposes of this motion that the allegation were correct, it would be unavailing. The issue here is not whether Bailey thought the property would be forfeited, but whether he knew it was subject to forfeiture. Moreover, a government official's representation that property will not be forfeited from a defendant does not confer a legal right, title or interest to a third person. If anything, such a representation could give rise to a cause of action based on the alleged representation, but as is also well-established, a cause of action is not cognizable as a legal interest in forfeited property within the meaning of Section 853(n).

> \*  \*  \*  \*  \*  \*

> If anything, Bailey's assertion that the government promised to forego forfeiture of the Biochem stock and to allow the proceeds of the sale of the stock to be used to pay his attorneys fees would give rise to a cause of action based on a theory of *quantum meruit*, promissory estoppel, or some other legal theory. Indeed, Bailey suggests in his petition that "the essence of the dispute here involves a contract between the United States and Bailey that is properly to be adjudicated pursuant to 28 U.S.C. § 1491." Petition at 12.

> If Bailey believes that he has a cause of action based on contract, he has a right to file a lawsuit in the Court of Claims.

(footnote omitted).

helpful briefs in support of their respective positions on the fortunately unusual issues raised by the factual record and the defendant's motion to dismiss. Because of the need to review the relationships between the case before this court and the actions of the Florida District Court and the Court of Appeals for the Eleventh Circuit, resolution of the defendant's renewed motion to dismiss has awaited the settling of matters before those courts. Following Mr. Bailey's most recent submission of money to the court and the cancellation of the scheduled hearing on the order to show cause in the District Court, the record appears settled.

From the inception of the events which form the alleged agreement to send Mr. Bailey off to assist in the repatriation of Mr. Duboc's assets, the parties appear to have intentionally left the details somewhat vague. Subsequent dealings and decisions by all parties as to which matters to pursue or not to pursue in various fora were equally self serving. As a result, this case raises difficult and troublesome issues under Section 1500 and the doctrine of *res judicata.* Surely, it is not the intent of the applicable jurisdictional statutes to preclude a citizen from having a forum in which to litigate. This court has attempted to analyze and apply the law of Section 1500 and *res judicata* to the facts of this case. The statutory and precedential guidance drives a result which is not without practical and logical challenges. Moreover, the right to lodge a complaint and pursue its resolution by no means guarantees litigation success. Our American system of justice, however, does embody the right to adjudicate claims somewhere in the system. Thereby, we resolve differences in a civilized away, whether the opponent is the federal government or a private party. By rejecting defendant's motion to dismiss, we do no more than that. For the reasons articulated above, the defendant's renewed motion to dismiss is, hereby, **DENIED.**

**IT IS SO ORDERED.**